LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

GALE SOSTEK; and HERB SOSTEK

Plaintiffs,

vs.

COUNTY OF SAN BERNARDINO; SAMUEL FULLER; and DOES 2-10, inclusive,

Defendants.

Case No.:
5:23−cv−02236−MRA−MRW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX-PARTE APPLICATION TO MODIFY SCHEDULING ORDER FOR PURPOSE OF HEARING DEFENDANTS' RENEWED MOTION TO STAY**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On March 12, 2023, Decedent was fatally shot by Deputy Samuel Fuller of the San Bernardino Sheriff's Department.  The shooting occurred near the 800 Block of Vista Ave., in Sugarloaf (Unincorporated BigBear), California, and Decedent was unarmed at the time of the shooting.

Defendants previously filed a motion to stay discovery on substantially the same grounds, which was denied by the Court.  In denying the Defendants' motion to stay discovery, the Court anticipated that Deputy Fuller intended to plead the Fifth during his deposition (see Order, Dkt. 46 at 9), and the Court's Order in no way invited the Defense to renew the motion once Defendant Fuller invoked his Fifth Amendment during the deposition.

As indicated in Defendants' ex parte application, "[o]n September 18, 2024, Deputy Fuller's deposition was taken."  See Def.s' Ex Parte App. at 2:23.  The Court's Order set the last day to *hear* motions for November 15, 2024.  See Court's Order, Dkt. 50 at 2.  Here, Defendants failed to exercise due diligence because they had since September 18, 2024, to timely file their motion to stay discovery so as to have it heard prior to the Court's cut-off date of November 15, 2024.  The defense had approximately two months to timely file their motion before the cut-off date.  Instead, Defendants waited until six days after the Court ordered hearing cut-off date to even file their ex parte application.  Since the Defendants failed to exercise due diligence, their ex parte application should be denied on this ground alone.

On September 18, 2024, Plaintiffs also took the deposition of Deputy Everman, who never fired his weapon during the incident, who witnessed the shooting and testified as to how the incident unfolded.  Declaration of Eric Valenzuela at ¶ 5.

Defendants' failure to exercise due diligence also does not meet the "good cause" standard of Federal Rule of Civil Procedure 16, where the primary focus of the analysis is the diligence of the party seeking the request.

Defendants' ex parte application also indicates that "[o]n October 14, 2024, additional documents were received from the DOJ regarding this matter" and these documents were "immediately sent [] to Plaintiffs' counsel".  See Def.s' App. at 3:3:2-5.  However, these documents were never produced to the Plaintiffs prior to filing the

instant ex parte application, and instead they were identified in an email sent by the
defense.  See Email from the Defense, attached hereto as Exhibit "A"; see also
Declaration of Eric Valenzuela at ¶ 6.  This would probably explain why no proof of
service was attached as an exhibit.  Further, the additional documents identified by the
defense does not alter or change the impact that Fuller's invocation of the Fifth
Amendment would have on the defense.  Instead, these additional documents are
merely an excuse by the defense in attempts to justify not having timely brought the
motion to stay discovery after Fuller invoked the Fifth during his deposition which took
place on September 18, 2024.  Moreover, Defendants' ex parte application indicates
that these additional DOJ documents were received by the defense on October 14, 2024.
Accordingly, the defense would still have had sufficient time to timely file their motion
so as to be heard by the November 15, 2024, hearing cut-off date or at least have the
motion filed before the cut-off date.

Defendants' motion to stay discovery would once again seek to stay all the
proceedings pending the resolution of the California Department of Justice's
investigation into the shooting of the unarmed Decedent.   However, the DOJ's
investigation could take years to conclude, Deputy Fuller has not been indicted and
there is no evidence that prosecution is imminent.  Further, the defense and DOJ is not
able to provide a timeline for the completion of the investigation.  Moreover, Plaintiff,
Herb Sostek is ninety-one (91) years old and any substantial delay may result in
Plaintiff passing away before he ever gets his day in court, resulting in substantial
prejudice to Plaintiff.  Accordingly, Defendants' ex parte application should be denied
in its entirety, there should be no stay in the discovery and the case should proceed to
trial at the end of January 2025.

## II.    LEGAL STANDARD

Pursuant to the Court's webpage, on the Central District Court's website, under the Law and Motion Schedule, Important Requirements' section, counsel are to be reminded that ex parte applications are solely for extraordinary relief and are discouraged.  Citing *Mission Power Eng'g Co. v. Cont'l Cas. Co*., 883 F. Supp. 488, 488 (C.D. Cal. 1995).  Further, a party seeking ex parte relief must show: (1) "the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Id*. at 490.

When a party moves for modification of the scheduling order before the final pretrial conference, the "good cause" standard of Federal Rule of Civil Procedure 16 applies.  Fed. R. Civ. P. 16(b)(4).  This standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id*.  If the moving party was not diligent, the inquiry ends.  *Id*.

The Court has discretion to stay civil proceedings in favor of criminal proceedings "'when the interests of justice seem to require such action.'" *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *United States v. Kordel*, 391 U.S. 1, 12 n. 27 (1970)). "The Ninth Circuit has held that a stay of civil proceedings pending the outcome of 'parallel criminal proceedings' is not required by the Constitution." *Ancier v. Egan*, 2015 WL 12684466, at *1 (D. Haw. Mar. 31, 2015) (citing *Fed. Sav. & Loan Ins. Corp. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)); see also *Keating*, 45 F.3d at 324, 326 ("The Constitution does not ordinarily require a stay

of civil proceedings pending the outcome of criminal proceedings.") (internal citations omitted). In deciding whether to grant a stay, a court considers "the extent to which the defendant's [F]ifth [A]mendment rights are implicated." *Keating*, 45 F.3d at 324. A court also considers the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id*. at 325. Courts apply the *Keating* analysis even when the party seeking the stay has not been indicted. See *Molinaro*, 889 F.2d at 903; *Wroth v. City of Rohnert Park*, 2018 WL 888466, at *2 (N.D. Cal. Feb. 14, 2018). However, "[t]he case for staying civil proceedings is 'a far weaker one' when 'no indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" *Molinaro*, 889 F.2d at 903 (quoting *SEC v. Dresser Indus., Inc*., 628 F.2d 1368, 1376 (D.C. Cir. 1980)).

Courts also apply the *Keating* analysis when a party seeks to stay discovery in light of an actual or potential parallel criminal proceeding. *Estate of Lopez v. Suhr*, 2016 WL 1639547, at *5 (N.D. Cal. Apr. 26, 2016) ("When a discovery stay is sought in light of an actual or potential parallel criminal proceeding, the Court frames its analysis of whether Defendants have met their "heavy burden" under Rule 26(c) using the framework set forth in *Keating*.").

## III.   ARGUMENT

Here, the defense cannot in good faith argue that they are "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of

excusable neglect." *Mission Power Eng'g Co*., 883 F. Supp. at 490.  Importantly, the defense is not arguing excusable neglect, nor do they provide a valid reason why their motion could not have been timely filed before the hearing cut-off date off November 15, 2024, when considering that the deposition in which Defendant Fuller invoked the Fifth Amendment took place on September 15, 2024.  The defense had more than ample time to timely file their renewed motion to stay discovery during this approximate two-month period.  Instead, the defense confusingly attempts to argue that they could not have timely brought their renewed motion because it was not until October 14, 2024, when they received additional documents from the DOJ, which they falsely claim were then immediately produced to the Plaintiffs.  These additional DOJ documents do not change, alter or impact the effect that Fuller invoking the Fifth Amendment would have on their case and the defense could still have timely brought their motion after receiving the documents on October 14, 2024, which is more than twenty-eight days from the motion hearing cut-off.  Accordingly, these additional documents from the DOJ do not absolve the Defendants of fault for failing to exercise due diligence in timely bringing their renewed motion and this is sufficient grounds alone for denying the ex parte application.  *Mission Power Eng'g Co*., 883 F. Supp. at 490.

The arguments made by the defense in both the original motion to stay and the ex parte application are almost identical in arguing that invocation of the Fifth Amendment would preclude them from mounting a full, fair and proper defense since they could not solicit testimony from Fuller about his objective beliefs which are critical to determine the merits of the excessive force claims, that his testimony is needed to determine the reasonableness of the use of force and the threat posed to Fuller's safety by Decedent. Further, both motions argue that Fuller's testimony is needed to defend itself by rebutting Plaintiffs' claims, that without Fuller's testimony the defense will be unable to prepare for trial and to establish their claims and defenses.  Moreover, both motions

argue that Fuller's testimony is needed to establish the objectively reasonable belief of imminent severe bodily injury or death at the time of the shooting.  However, it is important to point out that no criminal charges have been brought against Fuller and there is absolutely no indication that criminal charges against Fuller are imminent.  Therefore, Deputy Fuller could choose to testify at trial with little to no chance of suffering any prejudice therefrom.

Similar to the ex parte analysis, the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4) "primarily considers the diligence of the party seeking the amendment" and if the moving party was not diligent, the inquiry ends.  *Johnson*, 975 F.2d at 609.  As mentioned above, Fuller's deposition in which he invoked the Fifth Amendment occurred on September 18, 2024.  That gave the defense more than sufficient time to file timely file their motion so it would be heard before the motion hearing cut-off of November 15, 2024 (approximately two months).  Since the defense was not diligent, the inquiry should end there and the request to modify the scheduling order be denied.

Yesterday afternoon at approximately 12:30 pm, Plaintiffs' counsel emailed the defense to confirm that the defense never produced any additional DOJ documents as alleged in their ex parte application.  See Email from the Plaintiffs' counsel, attached hereto as Exhibit "B".  In response, at approximately 6:00 pm, the defense sent an email confirming that they never produced any additional documents and provided a Dropbox link with the documents.  See Email from the defense, attached hereto as Exhibit "C".

A quick review of these documents confirms Plaintiffs' previous argument, that these additional DOJ documents are merely an excuse by the defense to try to justify not timely renewing their motion to stay discovery after the September 18, 2024, deposition of Defendant Fuller.  These additional DOJ documents consist of reports and images relating to electronic data extraction from the Decedent's cell phone and tablet

and some reports and images regarding what are called "FARO scans" which are 3D visual representations of the real world captured with laser scanners and other tools. Declaration of Eric Valenzuela at ¶ 8.  The FARO scan images are almost identical to the scene photos previously produced early in the litigation and the only difference being that they are digitally recreated replicas of various scene photos.  *Id*.  Neither the information extracted from Decedent's phone and tablet (which was unknown to Fuller when he fatally shot Decedent), nor the FARO scans, have anything to do with the impact or effect that Fuller invoking his Fifth Amendment rights would have on the Defendants' ability to mount a defense and try their case.  Accordingly, because the defense has clearly failed to exercise due diligence and bring their renewed motion before the November 15, 2024, cut-off date, the Court should deny their ex parte application to modify the scheduling order.

In denying the Defendants' motion to stay discovery the Court found "that, absent evidence that Fuller has been criminally charged or an indictment is imminent" Fuller's Fifth Amendment rights "do[] not warrant a stay of proceedings in  this case." Court's Order, Dkt. 46 at 13.  Since the Court denied the Defendants' initial motion to stay the proceedings, absolutely nothing has changed with regards to evidence that Fuller has been criminally charged or that an indictment is imminent.  As a result, the Court should deny Defendants' request to renew their motion, on the same basis that the Court denied it in the first place.

The Court's Order denying a stay did state that:

> if Fuller invokes the Fifth Amendment, as he intends, the Court may take measures to limit any prejudice and determine the propriety of his invocations and any adverse inferences drawn from such invocations.

Court's Order, Dkt. 46 at 9.  However, in denying the Defendants' motion to stay, the Court contemplated and anticipated that Fuller intended to invoke the Fifth during his

deposition and that the Court does not appear to have invited or encouraged the defense to renew their motion once Fuller actually did invoke the Fifth during his deposition.

As correctly pointed out by the Court:

> Courts in this district have denied stays in the instant procedural posture, where no indictment has been filed and there are no indications that criminal charges are imminent. See, e.g., *A.H. v. Cnty. of San Bernardino*, No. EDCV 23-1028-JGB-SHK, 2023 WL 9646224 (C.D. Cal. Dec. 28, 2023) (denying a stay of discovery as to defendant under investigation where defendant had not been indicted, and defendants provided no evidence that charges are likely or imminent); *Vargas v. Cnty. of Los Angeles*, No. 19-CV-3279-PSG-AS, 2019 WL 6655269, at *3 (C.D. Cal. July 10, 2019) (denying stay request upon finding that prior to indictment, defendants "have real but not overwhelming Fifth Amendment interests" that must be balanced against the other factors); *Herd v. Cnty. of San Bernardino*, No. EDCV 17- 02545-AB-SP, 2018 WL 5816175, at *2 (C.D. Cal. Sept. 17, 2018) (finding a stay of discovery inappropriate where defendants had yet to be criminally charged and had offered no evidence that criminal charges are likely); *Est. of Morad v. City of Long Beach*, No. 16-CV-06785-MWFA-JW, 2017 WL 5187826, at *9 (C.D. Cal. Apr. 28, 2017) (rejecting request for a 120-day stay of discovery as to defendant under investigation because no indictment was forthcoming and any prejudice to defendant "remain[ed] speculative"); *Lindsey v. City of Pasadena*, No. 16-CV-08602-SJO-RAO, 2017 WL 5891097, at *3 (C.D. Cal. March 24, 2017) (holding that absent an indictment or evidence that criminal charges are imminent, the court "cannot conclude that not staying this action would substantially interfere with Defendant's Fifth Amendment rights"); *Perez v. Cnty. of Los Angeles*, No. 15-CV-09585-SJO-FFM, 2016 WL 10576622, at *3 (C.D. Cal. May 3, 2016) (finding "no basis in either law or reason" for staying civil litigation based on the mere possibility of criminal charges being brought against the defendant).

Court's Order, Dkt. 46 at 5-6.  Further, in the approximately three years that the DOJ has been investigating police officer involved shootings of mainly unarmed individuals, they have not brought criminal charges against a single law enforcement officer.

In denying the Defendant's initial motion to stay discovery the Court noted that:

1

2       Plaintiffs rightly point out that criminal investigations into officer-involved

3   fatal shootings are a matter of course mandated by law. ECF 44 at 6. As

the CA DOJ explains on its website, "[p]ursuant to California Assembly

4   Bill 1506 (AB 1506), the [CA DOJ] is required to investigate all incidents

5   of an officer-involved shooting resulting in the death of an unarmed

civilian in the state." ECF 41-1 at 2. "Given that the CA DOJ automatically

6   investigates every one of these incidents, Defendants effectively ask the

7   Court to 'create a blanket rule requiring a stay of civil proceedings where

there is a mere possibility of criminal charges against the involved

8   officers.'" A.H., 2023 WL 9646224, at *4 (quoting Herd, 2018 WL

9   5816175, at *2). Defendants' position has "no basis in either law or

reason," Perez, 2016 WL 10576622, at *3, and therefore is untenable.

10

11  *Id*. at 9.  Accordingly, the Court should deny Defendants' request to renew their motion

12  to stay discovery just as the Court did with the initial motion.

13      Contrary to Defendants' ex parte application, Plaintiffs' counsel will not attempt

14  to "weaponize Defendant Samuel Fuller's invocation of this Fifth Amendment right".

15  See Def.s' App. at 1:21-25.  Instead, Plaintiffs will seek to get an adverse inference

16  regarding Fuller's invocation of the Fifth Amendment as is permitted in civil cases.

17  Especially when no criminal charges have been brought and there is absolutely no

18  evidence that a criminal indictment is imminent.  Defendants also argue that Fuller

19  would risk "financial ruin via punitive damages sought" by the Plaintiffs.  *Id*. at 4In the

20  vast majority of cases, the County will pay any punitive damages awarded.  However, if

21  it will help the Court resolve this issue, the Plaintiffs would voluntarily waive their right

22  to seek punitive damages and would dismiss any request for punitive damages in their

23  Complaint.

24

25

26

1

**IV.    CONCLUSION**

2

For the reasons above stated, the Court should deny Defendants' Motion for in its

3

entirety.

4

5

Respectfully submitted,

6

7

8

Dated:  November 22, 2024          By_____*/s/ Eric Valenzuela*_____

9

                                                                    Eric Valenzuela
                                                                    Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Opposition to Motion to Stay Proceedings