1 LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
2 dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
3 evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
4 Woodland Hills, California 91367
Telephone: (818) 347-3333
5 Facsimile: (818) 347-4118

6 *Attorneys for Plaintiffs*

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12

13 GALE SOSTEK, et al.,

Plaintiffs,

14

15 vs.

16 COUNTY OF SAN BERNARDINO, et al.,

17 Defendants.

18

Case No.: 5:23-cv-2236 MRA (MRWx)

[*Honorable Mónica Ramírez Almadani*]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE SPECIFIC ITEMS OF INFORMATION ACQUIRED AFTER THE SHOOTING AND NOT KNOWN TO THE SHOOTING OFFICER AT THE TIME OF THE INCIDENT**

[[Proposed] Order; Declaration of Eric Valenzuela in Support of Plaintiffs' Motions in Limine and attached exhibits *filed concurrently herewith*]

Date: January 8, 2025
Time: 3:00 p.m.
Ctrm: 10B

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THIS HONORABLE COURT, PLEASE TAKE NOTICE** that on January 8, 2025 at 3:00 p.m. in the above-referenced court, Plaintiffs will and do hereby move to exclude specific items of information at trial in this matter that were acquired after the shooting, and not known to the shooting officer at the time of the shooting, including:

(1) the results of the toxicology tests for Decedent at autopsy.

**Statement of Local Rule 7-3 Compliance**:  This motion is made following a conference of counsel during which no resolution could be reached.

Plaintiffs base their motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Eric Valenzuela in Support of Plaintiffs' Motions in Limine and Exhibits attached thereto, any Reply in Support of Plaintiffs' Motion in Limine; Plaintiffs' [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this honorable court.


Respectfully submitted,


Dated: December 11, 2024              LAW OFFICES OF DALE K. GALIPO


By_____/s/ Eric Valenzuela_____
Eric Valenzuela
Attorneys for Plaintiffs

Case No. 5:23-cv-2236 MRA (MRWx)
PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE INFORMATION ACQUIRED AFTER THE SHOOTING

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE AFTER-ACQUIRED INFORMATION

### I.   INTRODUCTION

This civil rights case involves the March 12, 2023 shooting death of Mr. Kyle Sostek ("Decedent") by County of San Bernardino Sheriff's Deputy Samuel Fuller.

On Saturday, March 11, 2023, Big Bear Sheriff's Station personnel conducted their pre-shift briefing. During the briefing, information regarding a felony arrest warrant for Decedent was discussed. Sostek's arrest warrant indicated he was an armed and dangerous parolee at large and drove a white Honda Civic.

On Sunday, March 12, 2023, at approximately 0157 hours, Deputy Fuller located Decedent inside the Honda Civic near the intersection of Big Bear Boulevard and Green Way, in Big Bear. Fuller initiated a traffic enforcement stop, Decedent failed to yield, and a vehicle pursuit ensued. The vehicle pursuit continued for approximately seven minutes, and terminated in a cul-de-sac on Vista Avenue, in the community of Sugarloaf. Both Fuller and Sgt. John Everman were involved in the vehicle pursuit. At the conclusion of the vehicle pursuit, a lethal force encounter occurred, and Decedent was pronounced deceased at the scene.

It is undisputed that Decedent was unarmed at the time of the incident and that Fuller never gave a verbal warning that deadly force would be used prior to shooting Decedent. It is also undisputed that Decedent never physically touched Fuller or his gun/equipment prior to the shooting. Further, Decedent never verbally threatened any of the officers and the belt recorder captures Decedent telling Fuller that he just wants to talk to him shortly before the shooting begins. It is also undisputed that Decedent never attempted to punch or kick any of the deputies and there were also two deputies on scene to deal with one unarmed individual and there was less than lethal options, including the taser in Everman's hand, OC spray and batons. In fact,

Everman already had pulled his taser out and was prepared to use it on Decedent, when Fuller began to fire his gun.

Obviously, at the time of the shooting Fuller did not know the toxicology results performed during the autopsy.

This motion in limine is intended to exclude evidence that Defendants acquired after the fact and that was unknown to Fuller at the time of the shooting, and therefore cannot be taken into consideration under a totality of the circumstances analysis to determine whether the use of deadly force was reasonable or not. Specifically, the Decedent's toxicology results.

## II.    THE U.S. SUPREME COURT AND THIS CIRCUIT EXPRESSLY PROHIBIT USING INFORMATION UNKNOWN TO THE OFFICERS AT THE TIME OF THE SHOOTING (OR ACQUIRED AFTER THE FACT) TO DETERMINE THE REASONABLENESS OF A USE OF FORCE

In determining whether Deputy Fuller's use of deadly force was unreasonable, only information which was known to the officer at the time of the incident is relevant.  In this Circuit, information not known to the officer at the time of the shooting should not be taken into consideration.  *See Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir.2013) (holding that "we can only consider the circumstances of which [the officers] were aware when they employed deadly force.... Accordingly, when analyzing the objective reasonableness of the officers' conduct under *Graham*, we cannot consider the fact that [the decedent] was intoxicated or that he had previously used a knife in harming himself"). *Id.* at1232–33.  This issue was also addressed by the Ninth Circuit in *Glenn v. Wash. Cnty.*, 673 F.3d 864 (9th Cir.2011), which stated that "[w]e cannot consider evidence of which the officers were unaware-the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." *Id*. at 873 n.

8 (citing *Graham* ).  Accordingly, in this Circuit, unknown, pre-shooting knowledge is inadmissible to establish the reasonableness of an officer's conduct.

Further, in the Ninth Circuit, juries are instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *See* Ninth Circuit Model jury Instruction 9.25.  The Ninth Circuit Model Instruction for excessive force claims further informs the jury "in determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene".  *See* Ninth Circuit Model jury Instruction 9.25.

In light of how the jury will be instructed and given the great weight of Supreme Court and Ninth Circuit authority on this issue, permitting the jury to learn about facts and circumstances that Defendant Fuller was not confronted with or that were otherwise unknown to him at the time he made the decision to use deadly force against Decedent, would be improper.  In addition, since this type of evidence is not relevant to the jury's reasonableness determination, any probative value would be substantially outweighed by the risk of unfair prejudice that the jury would rest its decision on an improper basis and judge the shooting with 20/20 hindsight.  For these reasons and because the evidence is unduly prejudicial and improper character evidence, evidence of Decedent's toxicology results at autopsy, which was not known to Fuller at the time of the shooting, should be excluded as set forth below.

### III.    THE COURT SHOULD EXCLUDE REFERENCE TO THE TOXICOLOGY RESULTS AND ANY EVIDENCE OF PRIOR DRUG USE.

It is anticipated that Defendants will attempt to introduce at trial information contained in the coroner's toxicology report completed after the incident, which indicates that Decedent's blood tested positive for methamphetamine and marijuana

after the shooting.  Since this information was unknown to Fuller at the time of the
shooting, it in no way guided or informed Fuller's decision to use deadly force against
Decedent, and it is irrelevant to the *Graham* analysis and should be excluded.

The inference that Decedent would have been violent or specifically attempted
to harm the involved officers, including Fuller, during the incident because of the
Methamphetamine or marijuana later determined to be in his blood is a far reach and
too speculative.  Moreover, evidence of a person's character or a trait of character is
not admissible for the purpose of proving action in conformity therewith on a
particular occasion.

Plaintiffs also anticipate that the defendants may attempt to introduce improper
character evidence related to Decedent, including statements made by Diane Bilodeau,
Decedent's tattoos and the conclusions of the toxicology report, which would be based
on nothing more than speculation.  Since this evidence would also be improper
character evidence, it should be excluded pursuant to Rule 404 in addition to Rules
401, 402, and 403 of the Federal Rules Evidence.

### A.    Drug Evidence is Irrelevant.

Drug evidence is irrelevant to whether it was objectively reasonable for
defendant to shoot Decedent.  Defendant Fuller does not claim to have shot
Decedent because he was under the influence of drugs (which of course the
Defendants did not know at the time).  The jury must make this reasonableness
determination based on relevant witness testimony, not with improper "hindsight"
evidence.  This is important so as not to mislead the jury into a verdict supported
by bias and consideration of irrelevant evidence and unduly prejudicial.

To the extent Defendants may argue that the drug evidence may bear on
Decedent's state of mind, his subjective state of mind is not at issue—rather, the
issue is whether the shooting was objectively reasonable under the circumstances
Defendants confronted.  *Graham*, 490 U.S. at 397.  Just as the involved officers

subjective underlying intent or motivation is not relevant in determining the reasonableness of his use of force.  See *Price v. Sery*, 513 F.3d 962, 967 (9th Cir. 2008), citing, *Graham v. Conner*, 109 S. Ct. 1865, 1872-73 (1989).  Moreover, Decedent's alleged drug use is also irrelevant to any damages issues in this case. *Mason v. City of Chicago*, 641 F.Supp.2d 726, 730 (N.D. Ill. 2009) (in Section 1983 action, "any evidence regarding alleged drug use is not probative to the issue of damages, as such evidence does not touch on the value of [plaintiff's] life") (internal quotations omitted).  It would be pure speculation that a person's alleged use or possession of drugs on isolated occasions would make it less likely that the individual would be able to provide the same love and comfort in the future as a person who did not.

Further, the evidence cannot be used to show Decedent's character or that he acted or will act in conformity therewith.  *Palmerin v. Riverside, 794 F.2d 1409, 1414 (9th Cir. 1985)* ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant…."). Admission of this evidence would be nothing more than a backdoor attempt to tarnish Decedent's character and pollute the jury against Decedent and Plaintiffs.

Further, any evidence relating to Decedent's prior alleged drug use would constitute inadmissible hearsay in violation of Rule 802, and improper character evidence in violation of Rule 404.  Therefore, any evidence regarding the toxicology results at autopsy are irrelevant and should be excluded in the entirety from trial.

**B.    Drug Evidence is Unduly Prejudicial.**

Alternatively, the evidence of the toxicology results are unduly prejudicial and misleading and should be excluded under Rule 403.  Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of
cumulative evidence."  "Unfair prejudice" means "undue tendency to suggest
decision on an improper basis, commonly, though not necessarily, an emotional
one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City
of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is
likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

Evidence of drug use can only serve to unjustly inflame a jury's passions
and prejudices against a party—here, decedent and plaintiff.  *See Gregory v.
Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting a motion in
limine in an excessive force case to exclude drug paraphernalia the officers
discovered after the alleged excessive force occurred, because it was irrelevant and
unduly prejudicial under Rule 403); *id.* at *1 ("In today's climate, any evidence as
to a litigant's use of drugs has an obvious potential for being extraordinarily
prejudicial—for creating the prospect of deflecting the factfinders' attention from
the matters that are really at issue in the case to everyone's universally-shared
concerns as to the problems that drug usage is creating for our society."); *Kunz v.
DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008) (affirming district court's ruling
that barred "use of the word 'heroin,' because at the time of the arrest, the officers
did not know the nature of the drug or Kunz's usage and because mention of heroin
would be more prejudicial than helpful"); *Jackson v. City of Gahanna*, 2011 WL
587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items
seized from the Plaintiff on February 25 would undermine the protections of the
Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or
status as a presumed drug dealer justify the Defendant's use of force against
him."); *Wisler*, 2008 WL 2954179, at *5 (excluding evidence of marijuana use on
grounds it was unduly prejudicial because not known by Defendants); *Wiersta v.
Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986) ("Convictions for possession of a

syringe and hypodermic needle and possession of heroin . . . are unquestionably
highly prejudicial."); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir.
1995) ("Evidence of a conviction for drug possession alone . . . can be highly
prejudicial and arouse jury sentiment against a party-witness."); *cf. Rascon v.
Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of decedent's
mental health history, even though officers knew about his past suicide attempt and
mental illness history and argued it justified their actions in subduing him, because
of danger jury would conclude subduing was reasonable based on status rather than
conduct at the time); *Mason*, 631 F. Supp. 2d at 1060-61 ("The question of whether
Plaintiff smoked a marijuana cigarette three hours before the incident is no more
probative than whether the officers drank coffee before the incident.  The
introduction of expert testimony or testimony concerning facts unrelated to the
physical encounter would merely divert the jury from the relevant inquiry…
Marijuana plays no part in this inquiry and the introduction of such evidence serves
no purpose other than to make a general character attack on Plaintiff.").  The
inflammatory drug evidence is therefore likely to mislead or confuse the jury into
reaching a verdict that reflects its consideration of decedent's drug use as a reason
justifying the use of force or limiting plaintiffs' damages on an improper basis.

Admission of such evidence also poses a substantial risk of leading to
"litigation of collateral issues, thereby creating a side issue which might distract
the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516
(3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*);
*Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007).  The central factual dispute in this
case is whether Decedent posed an imminent threat of death or serious bodily
injury to Defendant Fuller when he was shot.  Refuting the inferences that
Defendants may attempt to raise Decedent's alleged drug use will necessitate a
mini-trial on collateral issues that have nothing to do with the central factual

dispute.  As a result, it will unduly consume this Court's and the jury's time, as well as the calling of several potentially unnecessary witnesses.  Accordingly, Plaintiffs respectfully request that the Court exclude evidence and argument regarding the toxicology results at autopsy under Rule 403.  In the alternative, in the event the Court finds that the toxicology results are relevant with regards to damages only[1], Plaintiffs would ask that liability and damages be bifurcated.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court exclude the following evidence and information that was acquired after the shooting and not known to the shooting officer at the time of the shooting, including:

(1) the results of the toxicology tests for Decedent at autopsy.

Respectfully submitted,

DATED:  December 11, 2024          LAW OFFICES OF DALE K. GALIPO

By_____/s/ Dale K. Galipo_____
　　　　　　　　　　Dale K. Galipo
　　　　　　　　　　Eric Valenzuela
　　　　　　　　　　Attorneys for Plaintiffs

---

[1] It is anticipated that Defendants will argue that the drug evidence is relevant as to the pre-death pain and suffering Decedent experienced after being shot.